MARY JUDIS, Appellant, Respondent, *v.* FRANK B. MARTIN, Respondent, Appellant.

First Department, December 3, 1926.

Attachment — property attachable — motion to vacate levy on income from trust fund set up by will for benefit of defendant — Civil Practice Act, § 684, authorizes levy of execution on income of trust fund but not levy of attachment — Civil Practice Act, § 916, does not authorize attachment of interest of beneficiary in trust set up by will — right of beneficiary under trust is not assignable under Personal Property Law, § 15, subd. 1, and Real Property Law, § 103, subd. 1 — levy of warrant of attachment on income from trust should be vacated.

The levy of a warrant of attachment on the income of a fund held in trust under a will for the benefit of the defendant, a non-resident, should be vacated, though the issuance of the warrant was fully justified by the facts of the case, for, while section 684 of the Civil Practice Act authorizes the levy of an execution on the income of a trust fund to a limited extent, that section does not provide for the levy of an attachment upon said income.

The right to make a levy under a warrant of attachment on the income from a trust fund is not authorized by section 916 of the Civil Practice Act, which provides in effect that an attachment may be levied upon a right or interest,

present or future, to any of the property or estate of a deceased person which may belong to the defendant, and which could be legally assigned by him as legatee or distributee, for the right of a beneficiary is not a right that can be assigned under subdivision 1 of section 15 of the Personal Property Law or subdivision 1 of section 103 of the Real Property Law.

CROSS-APPEALS by the plaintiff, Mary Judis, and by the defendant, Frank B. Martin, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 4th day of August, 1926, granting in part only a motion by the defendant to set aside certain levies under a warrant of attachment.

Defendant also appeals from the denial of his motion to vacate the order for service by publication and the service of process alleged to have been made thereunder.

*Abraham Rosenstein* of counsel [*Feltenstein & Rosenstein,* attorneys], for the plaintiff.

*George B. Brooks* of counsel [*Jackson, Fuller, Nash & Brophy,* attorneys], specially appearing for the defendant.

DOWLING, J.   Plaintiff, as assignee of a deficiency judgment for $11,379.64, sues on a collateral bond given by defendant under seal on December 6, 1912, to secure payment of the principal and interest of the mortgage in the foreclosure of which the deficiency arose and of the bond accompanying the same.   The complaint alleges that at the time of the execution and delivery of the collateral bond by the defendant, the latter was a resident of France (he is so recited on the bond) and that he has ever since continuously resided out of the State of New York (since he executed the bond in 1912); and that service of the summons and complaint, though effort to do so had been made in the State of New York, could not be made; and that during the entire time of that period defendant had made no designation of a person in this State upon whom process could be served.   The summons and complaint, and a bond on attachment were filed, and a warrant of attachment was duly granted, based upon defendant's non-residence.   This warrant was duly issued to the sheriff of New York county on March 8, 1926, who delivered a certified copy of the warrant of attachment and accompanying notices to the New York Trust Company on March 10, March 25, April 1, April 3 and July 2, 1926, and thereby made levies upon the income, interest and profits accruing from a certain trust fund held by said company as trustee created by the will of defendant's father and whereof the defendant is entitled to the income for life.

This trust is thus set forth in the 18th article of the will of John T. Martin, deceased:

" It is my will and I do hereby order and direct that as soon as conveniently may be after my decease, the sum of one hundred and fifty thousand dollars be safely invested as hereinafter directed by and in the name of my said executors or the survivors or survivor of them or such of them as shall be qualified to act for the benefit of my said son Frank Baynard Martin, and thereafter be kept so invested during his natural life, and that during his natural life, my said executors, the survivors or survivor of them, or such of them as shall be qualified to act, pay over the net interest and income thereof from time to time as the same shall be received unto the said Frank Baynard Martin and upon his death, it is my will and I do hereby order and direct that the said fund so·invested, together with the gains and increase or appreciations thereof be paid, divided and distributed to and among such person or persons and in such proportions as my said son Frank shall by his last ·will and testament appoint and direct and in default of such disposition by will to and among the next of kin then living of him the said Frank Baynard Martin, including the widow of my said son, if any, in the same manner, shares and proportions as according to the laws of the State of New York it would be if he at the time of his death were the absolute owner thereof in his own right and died intestate."

Upon its books the New York Trust Company carried as one of its accounts a certain trust under the title " The New York Trust Company as Substituted Trustee for Frank B. Martin under the Will of John T. Martin." This trust fund is invested in participating interests in first mortgages on New York real property. It is the custom of the trust company to receive the income in the form of a check to its order which is sent to the mortgage department, where the amount due each participant is computed. Thereafter the mortgage department sends a form credit ticket to the trust department, showing the short title of the trust, to wit, " Martin for Frank " and the amount of credit to which the trust is entitled. This ticket is then sent to the bookkeeping department where the amount is credited upon the sheet under the longer title first above given. It is shown that the following was the situation on the dates of the respective levies, the amount given being the credit existing in the trust income account on that date: March tenth, none; March twenty-fifth, none; April first, $264.34; April. third, $264.34; July second, $75.63. It is also shown that at all of the times above stated the amounts in the hands of the trustee were in the income account and had not been segregated from the trust account in any way or credited to the defendant individually and were still subject to the charges and expenses of the trustee.

There can be no doubt that the warrant of attachment in this case was properly granted. The action is one to recover a sum of money only as damages for breach of an express contract (other than a contract to marry) and defendant is sufficiently shown to have been a non-resident of the State of New York, residing at Paris, France, and having designated no one to receive service of process for him within this State.

The defendant contends that despite the provisions of section 684 of the Civil Practice Act, trust income, either as to the whole, or as to ten per cent thereof, is still exempt from levy and sale by virtue of an execution and that consequently no warrant of attachment may be levied upon such income to conserve it until judgment is obtained.

Section 684 of the Civil Practice Act is based on section 1391 of the Code of Civil Procedure. It provides in the first subdivision thereof, among other things, that where a judgment has been recovered and an execution returned wholly or partly unsatisfied, and where the income from trust funds is due and owing to the judgment debtor, or shall thereafter become due and owing to him, to the amount of twelve dollars or more per week, an order must be made, on proper application, directing that an execution issue against the income from trust funds, to the extent of ten per cent thereof, and the levy thereunder shall remain a continuing levy until the execution and the expenses thereof are satisfied. There is no question here that the income from the trust fund does not exceed twelve dollars per week.

In upholding the constitutionality of the amendment made by chapter 148 of the Laws of 1908 to section 1391 of the Code of Civil Procedure in so far as it provided for the issue of execution against ten per cent of the income derived from a trust fund, even though the fund was created by a will probated prior to the passage of such amendment, Judge WILLARD BARTLETT said in *Brearley School v. Ward* (201 N. Y. 358, 362):

" In the statutory revision of 1909 the consolidators have appended a note to section 98 of the Real Property Law which is of some interest in this discussion. It is as follows:

" ' The Code of Civil Procedure (§ 1391), as conceded, has put an end to a large " spendthrift trust " in this State. * * * The effect of § 1391 of the Code is to permit certain creditors of beneficiaries of trusts created under the third subdivision of § 76 (§ 96 of present law) of the former Real Property Law, to have execution on their judgments. So important a reform in our domestic law of trusts deserves to be called to the attention of lawyers and laymen reading the statute on Uses and Trusts and such a clause

might be added to this section. It ought not to be left obscurely contained in a long section of the Code of Civil Procedure.' "

It follows, therefore, that to the extent of ten per cent of the income payable to defendant from the trust fund created by his father's will, such income is subject to execution and levy, should plaintiff obtain a judgment against him in this action. But plaintiff is not yet a judgment creditor, and even conceding her right to reach ten per cent of defendant's income from the trust fund when she becomes such, has she a right meantime to levy upon ten per cent of such income under a warrant of attachment?

Plaintiff relies in support of her contention that an attachment may be levied upon the income from the trust fund herein, upon the following sections of the Civil Practice Act:

" § 916. * * * The attachment may also be levied upon a right or interest, present or future, to any of the property or estate of a deceased person which may belong to the defendant and which could be legally assigned by him as legatee or distributee, whether the same exists by reason of the provisions of a last will and testament admitted to probate at the time the attachment is granted, or by operation of the law in case of the intestacy of the deceased. Levy of the attachment thereupon is deemed a levy upon, and a seizure and attachment of, the rights and interests of the defendant at the time of such levy, subject to the rights of the executor, administrator or trustee of such estate to administer the same according to law."

" § 917. * * * 3. Upon other personal property, by leaving a certified copy of the warrant, and a notice showing the property attached, * * * if it consists of a right or interest in an estate of a deceased person arising under the provisions of a will or under the provisions of law in cases of intestacy, with the executor or trustee under the will, or the administrator of the estate."

But it is to be noted that the levy of the attachment is limited to a right or interest of defendant to any of the estate of a deceased person which may belong to him *and which could be legally assigned by him as legatee or distributee.* The right of a beneficiary to enforce the performance of a trust to receive the income of personal property and to apply it to the use of any person cannot be transferred by assignment or otherwise. (Pers. Prop. Law, § 15, subd. 1, as amd. by Laws of 1911, chap. 327.) The trust in the instant case is one to receive the income of personal property. But the same provision is to be found in the Real Property Law (§ 103, subd. 1). Surrogate SLATER called attention to this condition of the law, citing *Brearley School* v. *Ward* (*supra*) and the two sections just referred to in *Matter of Flint* (118 Misc. 354).

The only decisions to which our attention has been called upon this subject are *North American Trust Company* v. *Aymar* (33 Misc. 576), decided in 1901, and *Fiske* v. *Parke* (77 App. Div. 422). The former case held that an attachment could not be levied on the income of a trust fund, because an attachment would lie against such property only as was not exempt from levy and sale by virtue of an execution, and that the income of a trust fund cannot be the subject of a levy upon execution. The latter case held that the equitable interest of a beneficiary under a trust created by a will is not subject to a levy under an attachment, which is leviable only upon legal interests. Both these decisions were made before the amendment of section 1391 of the Code of Civil Procedure (Laws of 1908, chap. 148) passed upon in the case of *Brearley School* v. *Ward* (*supra*).

I reach the conclusion, therefore, for the reasons above given, that while the income from trust funds may be levied upon under execution, it cannot be levied upon under a warrant of attachment.

The order appealed from should, therefore, be modified by vacating the levies made on March 25 and July 2, 1926, as well as the three levies vacated by the learned court at Special Term, and as so modified affirmed, with ten dollars costs and disbursements to defendant.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Order modified by granting motion to vacate the levies made on March 25, 1926, and July 2, 1926, as well as the three levies directed to be vacated in the opinion of the court at Special Term, and as so modified affirmed, with ten dollars costs and disbursements to the defendant.